[Civ. No. 3951. Second Appellate District, Division One.—August 25, 1923.]

## ROY MILLSAP, Respondent, v. HARRY E. ALDERSON et al., etc., Appellants.

[1] MEDICAL PRACTICE ACT—MEDICINE AND SURGERY AND NATUROPATHY—DISTINCTIVE SYSTEMS — INTENT OF LEGISLATURE—AMENDMENT OF 1909 TO SECTION 16.—The legislature recognized, and intended to provide for, two distinct systems for the treatment of the sick and afflicted when it made provision, by amending in 1909 section 16 of the Medical Act of 1907, for the granting by the Board of Medical Examiners of certificates to practice medicine and surgery to one class of applicants and certificates to practice naturopathy to another class.

[2] ID.—PHYSICIAN AND SURGEON—DEFINITION OF.—A physician and surgeon is one who holds an unrevoked, unlimited certificate from the Board of Medical Examiners to treat the sick and afflicted.

[3] ID.—REVOCATION OF NATUROPATH'S CERTIFICATE — CERTIORARI—APPEAL—MEANING OF WORDS "NATUROPATHY" AND "NATUROPATH"—ARTICLES OF INCORPORATION OF ASSOCIATION OF NATUROPATHS OF THE STATE OF CALIFORNIA — EVIDENCE.—On an appeal from a judgment annulling on *certiorari* an order of the Board of Medical Examiners revoking a certificate to practice naturopathy, issued to the holder by the Association of Naturopaths of the State of California, and indorsed by the medical board in conformity to the provisions of the Medical Act of 1909, in determining the meaning of the words "naturopathy" and "naturopath," the articles of incorporation of said Association of Naturopaths of the State of California, in so far as they attempt to define said words or shed any light thereon, are not only competent evidence, but in view of the absolute dearth of information from other sources, they are as just and as satisfactory a source of evidence as can be resorted to in ascertaining the true meaning of the terms involved.

[4] ID.—NATUROPATH OR DOCTOR OF NATUROPATHY—DEFINITION OF.—A naturopath or a doctor of naturopathy is a person who holds an unrevoked certificate from the Board of Medical Examiners authorizing him to treat the sick and afflicted by the use of such substances as light, air, water, clay, heat, rest, diet, herbs, elec-

---

1. Application of statutes regulating the practice of medicine to persons giving special kinds of treatment, notes, 1 Ann. Cas. 51; 7 Ann. Cas. 377; Ann. Cas. 1917E, 1165; Ann. Cas. 1918B, 1119; 33 L. R. A. (N. S.) 179; L. R. A. 1917C, 822.

tricity, massage, Swedish movements, suggestive therapeutics, chiropractic magnetism, physical and mental culture.

[5] ID.—RIGHTS OF NATUROPATH — PHYSICIAN AND SURGEON.—Conceding that a naturopath has the right to prescribe herbs, electricity, and magnetism to the same extent as that exercised by a physician and surgeon, yet the possession of this right or privilege by the naturopath does not constitute him a physician and surgeon in the absence of any right to exercise the other duties of a physician and surgeon.

[6] ID.—EVIDENCE—ACTS OF MEDICAL BOARD—CONSTRUCTION OF.—The fact that the Board of Medical Examiners, for three consecutive years, issued to a person holding a certificate to practice naturopathy a receipt which recited the payment of a license fee and that said person "was thereby entitled to practice as a physician and surgeon," and the act of said board in including, for two consecutive years, in a directory of persons holding unrevoked licenses to practice under the medical act, said person in the tabulation of those holding certificates to practice medicine and surgery, did not constitute a recognition on the part of said board that the naturopathy certificate authorized said person to practice medicine · and surgery; nor did such acts amount to a placing by said board of a construction upon such naturopathy certificate entitling the holder thereof to practice medicine and surgery.

[7] ID.—HOLDER OF NATUROPATHY CERTIFICATE—ABSENCE OF RIGHT TO PRACTICE MEDICINE AND SURGERY—REVOCATION OF CERTIFICATE—EVIDENCE.—A holder of a naturopathy certificate is without any right or authority to engage under such certificate in the general practice of medicine and surgery; and the revocation of such certificate is justified where the holder thereof is found to have engaged in the practice of medicine and surgery.

[8] ID.—RE-ENACTMENT OF SECTION 14—AMENDMENT OF 1921—REPEAL. The mere re-enacting of section 14 of the Medical Practice Act by the amendment of 1921 with the changes relating to the punishment which the medical board was authorized to impose upon persons holding certificates under the act, and to appeals from the orders of said board, did not work any repeal of that portion of said section re-enacted.

[9] ID.—ORDERS OF MEDICAL BOARD — APPEAL—UNCONSTITUTIONALITY OF AMENDMENT OF 1921 TO SECTION 14.—The amendment of 1921 to section 14 of the Medical Practice Act, in so far as it attempts to confer appellate jurisdiction upon the superior court in the case of an appeal from an order of the medical board revoking a certificate to practice naturopathy, is unconstitutional.

[10] ID.—DISAPPROVAL OF DECISION IN IN RE GERBER, 57 CAL. APP. 141 (206 PAC. 1004).—In so far as the case of *In re Gerber*, 57 Cal.

App. 141 (206 Pac. 1004), is inconsistent with the decision in the instant case, the decision in the former case is disapproved. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. S. Crail, Judge. Reversed.

The facts are stated in the opinion of the court.

Harry A. Encell, Frank M. Smith, Charles D. Ballard and H. J. Castellaw for Appellants.

H. C. Millsap and Millsap & Kendall for Respondent.

CURTIS, J.—This is an appeal from a judgment annulling on *certiorari* an order of the Board of Medical Examiners revoking respondent's certificate to practice naturopathy in the state of California.

Respondent was licensed to practice naturopathy on August 6, 1909, and immediately thereafter entered upon the practice of his profession, and has ever since continued said practice. During all of said time respondent, in addition to the practice of naturopathy and without any other license from said Board of Medical Examiners, has engaged in the practice of medicine and surgery, and was so engaged on the fifth day of January, 1921. On January 11, 1921, a verified complaint was filed with said Board of Medical Examiners charging that respondent on the fifth day of January, 1921, and for six months prior thereto had practiced a system and mode of treating the sick and afflicted not authorized by his said certificate, and asking for a revocation of his certificate. A hearing was had upon this complaint and at its conclusion said board made and entered its order finding the respondent guilty of the charge preferred against him, and as a penalty revoked his certificate to practice naturopathy. This order of the Board of Medical Examiners was annulled by a judgment of the superior court, and from said judgment appellants have perfected this appeal.

The contention of respondent is that the certificate to practice naturopathy, issued to him by the Board of Medical Examiners on August 6, 1909, authorized him to engage in the practice of medicine and surgery.

The agreed statement of facts herein shows that on August 8, 1904, the Association of Naturopaths of California was incorporated under the laws of the state of California. Immediately after its organization said association established a college in the city of Los Angeles where students were enrolled and after completing the required course of study were given diplomas or certificates conferring upon them the degree of doctor of naturopathy. The officers authorized by said association to sign and issue said diplomas or certificates were known as the ''State Board of Examiners of the Naturopathic Physicians'' or ''Board of Examiners of the Association of Naturopaths of California.'' On March 1, 1908, said board issued to Roy Millsap, the respondent herein, a diploma or certificate conferring upon him the degree of doctor of naturopathy. At the time respondent received said diploma or certificate, conferring upon him said degree of doctor of naturopathy, an act regulating the practice of medicine and surgery, osteopathy, and other systems and methods of treating the sick, approved March 4, 1907 (Stats. 1907, p. 252), was in effect in this state. This act provided for the issuance of three different forms of certificates by the Board of Medical Examiners of the state of California. First, a certificate authorizing the holder to practice medicine and surgery; Second, a certificate authorizing the holder to practice osteopathy; third, a certificate authorizing the holder to practice any other system or mode of treating the sick and afflicted, not otherwise referred to. The act further provided that in order to procure a certificate to practice medicine and surgery, the applicant for such certificate should file with said board a diploma issued by some legally chartered medical school possessing certain prescribed requirements; applicants for a certificate to practice osteopathy should file a diploma from a legally chartered college of osteopathy; applicants for a certificate to practice any other system or mode of treatment should file a diploma from a legally chartered college of the system or mode of treatment which the applicant claims or pretends to follow.

By section 16 of said act any person who, at the date of the adoption of said act of 1907, held a certificate from the Board of Medical Examiners created under any of the

previous acts of the legislature regulating the practice of medicine and surgery, was entitled to practice medicine and surgery in this state the same as if it had been issued under said act, and any person who, on said date, held a certificate from the board of osteopathic examiners under the act regulating the practice of osteopathy was entitled to practice osteopathy in this state the same as if it had been issued under said act.

In the year 1909, by an act of the legislature, approved March 19th of that year (Stats. 1909, p. 418), a new paragraph was added to said section 16, which provided that any person who then held an unrevoked certificate issued by the board of examiners of the association of naturopaths of California, incorporated under the laws of the state of California August 8, 1904, and who was practicing naturopathy prior to the passage of said amendment of 1909, would be entitled to practice naturopathy in the state of California, the same as if it had been issued under said amendment. This law further provided that the Board of Medical Examiners should indorse such certificates at their first meeting after said amendment became a law, or at any subsequent meeting within six months thereafter, by the signature of its president and secretary, and affixing its official seal.

It does not appear that the respondent ever attempted to comply with the law of 1907, but on August 6, 1909, his diploma or certificate, authorizing him to practice naturopathy, was presented to said Board of Medical Examiners and indorsed by it as provided by said amendment of 1909, and this certificate so indorsed by the Board of Medical Examiners is the only certificate or license ever issued to respondent by the Board of Medical Examiners of the state of California, and it was this certificate or license which was revoked by said Board of Medical Examiners under the complaint filed with said board on January 11, 1921.

It will thus be seen that at the date respondent received his said certificate from the Board of Medical Examiners of the state of California, the laws of this state regulating the practice of medicine and surgery, osteopathy and other systems of treating the sick, as enacted in 1907 and amended in 1909, provided for at least three kinds of certificates.

First, a certificate to practice medicine and surgery; second, a certificate to practice osteopathy; and third, a certificate to practice naturopathy. While there have been various amendments to the Medical Practice Act since respondent received his said certificate from said Board of Medical Examiners, none of said amendments in any way affected the legal status of respondent, nor enlarged his powers under said certificate.

In providing for these three distinct forms of certificates, the legislature must have had in mind three distinct systems for the treatment of the sick and afflicted. If the practice of naturopathy is the same as that of the practice of medicine and surgery, why make any distinction in the form of certificates which the followers of the two systems must procure from the Board of Medical Examiners? Why was it provided in section 16 of the 1909 law that those persons who held certificates from the Board of Medical Examiners, created under the acts of the legislature adopted prior thereto, should be entitled to practice medicine and surgery, and that those persons who held certificates from the board of examiners of the Association of Naturopaths should be entitled to practice naturopathy, if the practice of medicine and surgery and the practice of naturopathy were one and the same system? Why did the legislature not provide that any person holding a certificate from the Board of Medical Examiners or from the board of examiners of the Association of Naturopaths should be entitled to practice medicine and surgery if the practice of naturopathy meant the same thing as the practice of medicine and surgery? [1] We cannot escape the conclusion from the reading of these statutes that the legislature recognized, and intended to provide for, two distinct systems for the treatment of the sick and afflicted when it made provision for the granting by the Board of Medical Examiners of certificates to practice medicine and surgery to one class of applicants, and certificates to practice naturopathy to another class. Just what the distinction between these two systems is we will now endeavor to ascertain. Neither the statute of 1907, in its original form, nor as amended in 1909, defines either a physician or surgeon or a naturopath. Neither does it define what is meant by the practice of medicine and surgery, nor what is meant

by the practice of naturopathy. Section 11 of the Medical Practice Act of 1876 (Stats. 1875–76, p. 794), being the first statute enacted in this state for the regulation of the practice of medicine, provided that ''Any person shall be regarded as practicing medicine, within the meaning of this act, who shall profess publicly to be a physician and to prescribe for the sick, or who shall append to his name the letters 'M. D.' ''

This section was amended by the Medical Practice Act of 1878 (Stats. 1877–78, p. 920, sec. 5) and as amended read as follows: ''Any person shall be regarded as practicing medicine, within the meaning of this act, who shall profess publicly to be a physician, or who shall habitually prescribe for the sick, or who shall append to his name the letters 'M. D.' '' This statute was repealed by the Medical Practice Act of 1901 (Stats. 1901, p. 56). In section 16 of this latter statute we find the following definition:

''Sec. 16. *Definition.* The following persons shall be deemed as practicing medicine or surgery within the meaning of this act:

''1. Those who profess to be, or hold themselves out as being, engaged as doctors, physicians or surgeons in the treatment of disease, injury, or deformity of human beings.

''2. Those who, for pecuniary or valuable consideration, shall prescribe medicine, magnetism, or electricity, in the treatment of disease, injury, or deformity of human beings.

''3. Those who, for pecuniary or valuable consideration, shall employ surgical or medical means or appliances for the treatment of disease, injury, or deformity of human beings, except dealers in surgical, dental and optical appliances.

''4. Those who, for a pecuniary or valuable consideration, prescribe or use any drug or medicine, appliance, or medical or surgical treatment, or perform any operation for the relief or cure of any bodily injury or disease.''

This section does not appear to have been directly repealed until 1921, but in 1913 a new medical act was enacted (Stats. 1913, p. 722). By section 8 of this act it was provided that the Board of Medical Examiners shall issue a form of certificate to read as follows: ''A certificate authorizing the holder thereof to use drugs or what are known as medical preparations in or upon human beings

and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions, which certificate shall be designated 'physicians and surgeons certificate.' " This section, in so far as it provides for the form of a "physicians and surgeons certificate," remains the law up to the present time. We think it apparent from these statutes, particularly since the passage of the medical act of 1901, which was in effect at the time respondent was granted his certificate or license to practice naturopathy by the Board of Medical Examiners, that it was intended to confer upon those holding physician's and surgeon's certificates unlimited authority to prescribe for and treat the sick and afflicted, and to use any and all methods in such treatment. [2] We, therefore, conclude that a physician and surgeon is one who holds an unrevoked, unlimited certificate from the Board of Medical Examiners to treat the sick and afflicted.

Having ascertained the meaning of the terms "physician and surgeon," let us turn our attention to the words "naturopathy" and "naturopath." Not only are these terms not defined in the statutes of 1907 and 1909, as we have before observed, but we fail to find that the legislature has ever attempted to define either of these terms. Not only so, but if our information is correct neither of these words is to be found in any medical work or dictionary. Nevertheless, we believe that the record in this proceeding furnished a satisfactory method of ascertaining a correct definition of these terms. As we have before seen, the amendment to the Medical Practice Act of 1907, enacted in 1909 (Stats. 1909, p. 418), provided that "Any person who holds an unrevoked certificate issued by the board of examiners of the Association of Naturopaths of California, incorporated under the laws of the State of California, August eighth, 1904, . . . shall be entitled to practice naturopathy. . . . " By the passage of this statute the legislature gave its official recognition to the work of the Association of Naturopaths of California, a corporation formed under the laws of this state. The legislature did not attempt to define the system nor prescribe the powers and privileges of one holding a certificate so to practice. Neither did it recognize all certificates to practice this system of

healing, but only those issued by a certain association incorporated under the laws of the state of California, to wit, the Association of Naturopaths of the State of California. The articles of incorporation of this association were on file in the office of the Secretary of State and were a public record at the date of the passage of this amendment, and it is only reasonable to assume that in officially recognizing the holders of certificates issued by said association as competent to practice a system of treating the sick and afflicted, that the legislature was cognizant of the purposes of this association as set forth in its articles of incorporation, and that it authorized the Board of Medical Examiners to recognize such certificates having in view the purposes of the association as contained in its articles of incorporation, and that in placing its stamp of approval upon such certificates, it did so with the understanding that the system of treatment to be followed by its certificate holders would be in conformity to the expressed purposes of said association as set forth in its articles of incorporation. **[3]** But even if we are not justified in so assuming, we are of the opinion that these articles of incorporation, in so far as they attempt to define the practice of naturopathy, or if they shed any light upon the meaning of the words ''naturopathy'' or ''naturopath,'' are not only competent evidence, but in view of the absolute dearth of information from other sources, they are as just and as satisfactory a source of evidence as we can resort to in our endeavors to ascertain the true meaning of the terms involved.

The articles of incorporation set forth the purposes of the Association of Naturopaths of the State of California, in paragraph II thereof, as follows: ''H. The purposes for which this corporation is formed are fundamentally to seek, teach and embody truth, principally to study nature, mind and man and ultimately to enable the individual human being to bring within right the highest possible attainments consistent with his inborn qualities, tendencies and desires, to interpret nature, to unfold humanity and to teach naturopathy, 'In its theoretical, practical modes of restoring and maintaining health,' to raise the standard of qualification; to increase the proficiency of its members, to promote the science of naturopathic therapeutics and for the interchange and discussion of matters of mutual inter-

est, and to give the members legal protection. The materia medica shall consist of light, air, water, clay, heat, besides rest, diet, herbs, electricity, massage, Swedish movements, suggestive therapeutics, chiropractic, magnetism, physical and mental culture, etc., etc. The Board of Examiners shall examine all applications for active membership. All members who shall have passed a satisfactory examination before the board may be issued a diploma, conferring the degree of doctor of Naturopathy upon them; such diploma shall be signed by the members of the Board, President and Secretary."

By reference to the above paragraph of said articles of incorporation, it will be observed that one of the purposes of said association is "to teach naturopathy in its theoretical and practical modes of restoring and maintaining health," and that "the materia medica shall consist of light, air, water, clay, heat, rest, diet, herbs, electricity, massage, Swedish movements, suggestive therapeutics, chiropractic, magnetism, physical and mental culture, etc." "Materia medica" is defined as "the substances employed as remedial agents." [4] Therefore, the substances employed by one practicing naturopathy in the treatment of the sick and afflicted would be light, air, water, etc., and a naturopath or a doctor of naturopathy would be a person who holds an unrevoked certificate from the Board of Medical Examiners authorizing him to treat the sick and afflicted by the use of the substances above enumerated.

From these definitions of a physician and surgeon and of a naturopath it must be evident that the calling or profession of one differs materially from the calling or profession of the other; that the system of healing employed by the naturopath has little in common with that employed by the physician and surgeon, and that, while the physician and surgeon is authorized to treat the sick and afflicted by any and all methods and means, the naturopath is limited in his treatment to his particular system.

It is true as suggested by respondent that among the acts which the law permits a physician and surgeon to perform is to prescribe medicine, magnetism and electricity, and that herbs, electricity, and magnetism are included among the substances which compose the materia medica of naturopathy, and, therefore, are permitted to be pre-

scribed by a naturopath or doctor of naturopathy. [5] Conceding that a naturopath has the right to prescribe herbs, electricity, and magnetism to the same extent as that exercised by a physician and surgeon, yet the possession of this right or privilege by the naturopath does not constitute him a physician and surgeon in the absence of any right to exercise the other duties of a physician and surgeon. The optometrist may test the eyes for glasses in the same manner as a physician and surgeon may do, yet this right in no way constitutes him a physician and surgeon, or authorizes him to practice medicine and surgery. The chiropodist may perform certain surgical operations upon the feet, as now provided by statute, yet it would not be claimed that when this power was conferred upon him he was created a physician and surgeon. There is no doubt but that the practice of osteopathy and the practice of medicine and surgery overlap to a certain extent, but still it would not be claimed that a license to practice osteopathy constituted the holder thereof a physician and surgeon.

Respondent further claims that the Board of Medical Examiners, by a certain course of procedure indulged by it during the time that respondent was practicing his profession under his certificate, both recognized him as a physician and surgeon, and by its conduct clearly showed that said board construed respondent's certificate as a certificate entitling him to practice medicine and surgery. The statute passed in 1917 (Stats. 1917, p. 93) required every holder of a license under Medical Practice Act to pay an annual license fee. This fee the respondent paid for each of the years 1919, 1920, and 1921, and for each of said payments received a receipt from said Board of Medical Examiners which recited the payment of said fee and that respondent "was thereby entitled to practice as a physician and surgeon." By the same statute the Board of Medical Examiners was authorized and directed to publish annually a directory, giving the addresses of all persons in the state who held unrevoked licenses to practice under any medical practice act of the state. This directory was to contain, in addition to the names and addresses of said persons, and other information, a statement of the form of certificate held by each of said persons. The directory was made *prima facie* evidence of the right of the persons named

therein to practice. In compliance with the provisions of said statute the Board of Medical Examiners published such a directory, and in addition to the matters provided by law included therein for each of the years 1920 and 1921 a tabulation of all certificates issued between August 1, 1901, and August 10, 1913, as follows: "To practice medicine and surgery 2233, to practice osteopathy 258, to practice any other system none." Respondent's name in said directory was followed by the letter "N." Other names were followed by the letter "O." A note preceding said names explained that the letter "N" stood for naturopath and the letter "O" for osteopath. Respondent argues that his certificate having been issued between the dates above indicated, and not being a certificate authorizing the holder thereof to practice osteopathy, as his name was followed by the letter "N" and not by the letter "O," must be included in the 2233 certificates first enumerated, and being those authorizing the holders thereof to practice medicine and surgery.

Therefore, respondent insists that the Board of Medical Examiners by these acts, both in issuing said receipts in the form in which they were issued and in the preparation of said directory in the manner hereinbefore set out, recognized respondent's certificate to practice naturopathy as one conferring upon him the right to practice medicine and surgery, and that the construction thus placed upon the word "naturopathy" by the Board of Medical Examiners, a board composed of men learned in the medical profession, should be accepted by this court as the true meaning of the word "naturopathy." This especially should be the rule to be adopted by this court in this case, respondent insists, for the reason that the word "naturopathy" is a technical word, and does not appear in any medical work or dictionary and has not been defined by the legislature.

[6] We cannot agree with the respondent in his contention, either that the Board of Medical Examiners had recognized his certificate as one authorizing him to practice medicine and surgery or that said board by any of its acts had placed a construction upon certificates of naturopathy which would entitle the holders thereof to practice medicine and surgery. In the first place, the record in this case would not justify the court in holding that said

board had any intention of recognizing, or, in fact, ever did recognize, respondent's certificate as one entitling him to practice medicine and surgery, nor does this record show that the board ever placed such a construction on the word "naturopath" as claimed by respondent. Furthermore, the powers of the Board of Medical Examiners are defined. and limited by the various statutes passed by the legislature upon this subject, and we fail to find in any of these statutes any authority given said board to grant a certificate to any person to practice medicine and surgery except he possess a diploma or certificate from certain recognized medical colleges, and by his complying in other respects with the requirements of the statutes. If the board was without authority to grant respondent a certificate to practice medicine and surgery upon his diploma from the Association of Naturopaths of California, it surely could not do indirectly what it is prohibited from doing directly by "recognizing" his certificate to practice naturopathy as one entitling him to practice medicine and surgery.

As to the construction or interpretation of the word "naturopathy" claimed by respondent to have been placed thereon by the acts of the Board of Examiners, as we have already observed, we do not find anything in the record in this proceeding which would justify the conclusion that the Board of Medical Examiners ever intentionally placed any such construction or interpretation upon said term as claimed by respondent. But even if the record was otherwise, we would not feel that this court was bound by the determination of such question by said Board of Examiners, in view of what we have already said regarding the stated purposes of the Association of Naturopaths of California as set forth in its articles of incorporation and the weight that should be given this statement in determining the meaning of the word "naturopathy."

[7] We are, therefore, of the opinion that respondent, under his certificate to practice naturopathy, was without any right or authority to engage in the general practice of medicine and surgery, and that the Board of Medical Examiners, having upon competent proof found that he had so engaged in the practice of medicine and surgery, at the time alleged in said complaint, was justified in revoking his said certificate. This conclusion, we believe, is in har-

mony with the views expressed by the supreme court in the case of *In re Rust,* 181 Cal. 73 [183 Pac. 548], and with those of the court of appeal as expressed in *Shoults* v. *Alderson,* 55 Cal. App. 527 [203 Pac. 809], and *Harlan* v. *Alderson,* 55 Cal. App. 263 [203 Pac. 1014]. Our views, however, may not be in entire agreement with the decision in *In re Gerber,* 57 Cal. App. 141 [206 Pac. 1004], which we are unable to reconcile either with the cases above referred to or with our own interpretation of the provisions of the Medical Practice Act.

Counsel for respondent further contends that the proceedings against respondent having been commenced prior to the enactment of the amendment of section 14 of the Medical Practice Act of 1921 (Stats. 1921, p. 1009), and the order revoking his certificate having been made and entered subsequent to the time said amendment went into effect, that the 'board was without jurisdiction to make or enter said order of revocation. This contention is advanced upon the theory that, by the amendment of 1921, section 14, as it stood when said proceedings were instituted, was repealed, and, therefore, no further proceedings could be had thereunder. Section 14 as amended was a re-enactment of said section in its original form, with two modifications, one relating to the punishment which the board was authorized to impose upon persons holding certificates under the Medical Practice Act and the other relating to appeals from the orders of said board. [8] The mere re-enacting of section 14 with these changes would not work any repeal of that portion of said section re-enacted. Section 325 of the Political Code provides for just such a contingency, and is as follows: "Where a section or part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment." (See, also, *Fletcher* v. *Prather,* 102 Cal. 413–419 [36 Pac. 658]; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 177 Cal. 249 [170 Pac. 426].) There may be some California cases which appear to hold a contrary doctrine, but we believe the correct rule is expressed in said section 325.

As we have already seen, the respondent in this case, being dissatisfied with the order of the Board of Medical Examiners in revoking his certificate, brought this proceeding in the superior court by *certiorari.* We have also seen that by the amendment of section 14 of the Medical Practice Act as enacted in 1921 (Stats. 1921, p. 1009) an attempt was made to provide for an appeal from the order of the Board of Medical Examiners to the superior court in cases of this kind. If an appeal would lie from the order of said Board of Medical Examiners to the superior court, then proceedings in *certiorari* would not be a proper remedy. [9] It is apparent, however, that said amendment of 1921 to said section 14, in so far as it attempts to confer appellate jurisdiction upon the superior court, is unconstitutional. The appellate jurisdiction of the superior court is fixed by article VI, section 5, of the constitution. Therefore, any attempt on the part of the legislature to either enlarge or limit the appellate jurisdiction of said court would be unconstitutional and void. (*Chinn* v. *Superior Court,* 156 Cal. 479 [105 Pac. 580].) The proceeding in *certiorari,* therefore, instituted by the respondent herein, was, in our opinion, the correct proceeding in order to test the validity of said order of the Board of Medical Examiners.

For the reasons above stated judgment is reversed, with directions to the superior court to dismiss said proceeding.

Conrey, P. J., and Houser, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 22, 1923, and the following opinion then rendered thereon:

THE COURT.—The application for transfer to this court after decision by the district court of appeal of the second appellate district, division one, is denied.

The application is based, in part, on a conflict between this decision and a decision rendered by the second division of the second district court of appeal, in *In re Gerber,* 57 Cal. App. 141 [206 Pac. 1004]. [10] In so far as that case is inconsistent with the decision in the above-entitled case we disapprove of the decision in *In re Gerber.*