No. 13,752.

HURLEY v. THE PEOPLE.
(63 P. [2d] 1227)

Decided December 24, 1936.

Mr. Thomas H. Gibson, for plaintiff in error.

Mr. Paul P. Prosser, Attorney General, Mr. Walter F. Scherer, Assistant, Mr. A. G. Gertz, of counsel, for the people.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Plaintiff in error, charged by information, in a first count, with unlawfully practicing medicine without a license, and in a second with unlawfully practicing chiropractic without a license, was convicted on both counts. He was sentenced to thirty days in jail and fined fifty

dollars on each count, the jail sentences to run concurrently.

The charging portions of the information read as follows: "That, on the fifteenth day of August, A. D. 1934, at the said City and County of Denver, and State of Colorado, John L. Hurley did unlawfully engage in the practice of medicine within the state of Colorado without first having obtained a license therefor as provided by law, in this, to wit: He did then and there unlawfully hold himself out to the public as being engaged within this state in the business of diagnosing and treating diseases, diseased conditions, injuries and defects of human beings by the use of drugs, surgery, manipulation, electricity and other physical and mechanical means, and did then and there prescribe, use and recommend a form of treatment for the intended palliation, relief and cure of physical ailments and defects of a person, to wit: Charles Spitz, with the intention of receiving a fee therefor; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Colorado." Second count: "That John L. Hurley, on, to wit: the fifteenth day of August, A. D. 1934, at, to wit: the City and County of Denver, state of Colorado, did unlawfully engage in the practice of chiropractic, without first having obtained a license to practice chiropractic pursuant to the provisions of chapter 49, at page 372, of the 1933 Session Laws of the state of Colorado, in this, to wit: he did then and there unlawfully hold himself out to the public as being engaged within this state in the business and practice of chiropractic as defined by the aforesaid Act, by the treatment and diagnosing of diseases and diseased conditions, injuries and defects of human beings, and did then and there use and recommend a form of treatment for the intended palliation, relief and cure of physical ailments and defects of a person, to wit: Charles Spitz, with intention of receiving a fee therefor; contrary to the form of the statute * * *."

It appears that of the time mentioned in the informa-

tion, plaintiff in error, not licensed to practice medicine or chiropractic, nor so professing, was conducting a school for healing; that the course he offered consisted of seventy-two hours of lecturing and demonstrating, over a period of five weeks, for which he charged $75 per pupil; that the central thought of his theory, as we understand, is that if the human body, prone to depart therefrom, as said, were restored or adjusted to the "center of gravity," and kept so—to attain which he directed his course of instruction—the physical ills of mankind would largely cease; that in demonstration of his conception of what would restore the center of gravity, the plaintiff in error would cause one of the class, always a volunteer, to present his nude back to the view of the remaining members of the class, and to so stand in relation to a plumb line suspended from the ceiling in line with his spinal column, that departures of the body from gravity would be observable; that in promoting restoration of the center of gravity of the body toward its normal, he would lightly touch the subject "on the muscle known as gluteus maximus, on the buttocks," and on other muscles, which was calculated, as claimed, to cause relaxation and induce return to normal, the whole result to be that ills having seat in abnormal distortions of the body, said to exhaust the category of ailments, primarily to be attributed to the departure of the body from center of gravity, will yield to restored gravity. It further appears that plaintiff in error did not treat individual cases, nor did he teach other than in classes; that he made no examination as to the physical condition of pupils entering or desiring to enter his classes, and did not inquire of them as to whether they were suffering from any ailment. On the contrary, he made no diagnosis in any instance, disclaimed desiring to be advised of any claimed ailment, and assured all that his purpose was to teach a technique calculated to eliminate that which he claimed was the cause of all ills. It is worthy of note, we think, that neither Charles Spitz, named in the information, nor

any other pupil attending the school complained of plaintiff in error or of what he taught, and testifying pupils—all called by the prosecution—said that as the result of the course they took in the school of instruction for healing conducted by plaintiff in error their health had been greatly improved. Whether the course has merit is not within our learning.

Plaintiff in error contends: (1) That as of right he was conducting a private school, where, offering nothing inherently injurious or harmful to public health, safety, welfare or morals, he taught those attending his classes the importance of body equilibrium and how it could be established and maintained; (2) that nothing he offered his classes pertained to the practice of either medicine or chiropractic; (3) that since medicine and chiropractic are diverse, and verdicts of guilty on both counts were returned on a single state of facts, the verdicts neutralize each other, leaving nothing on which adverse judgment could enter; (4) that the proviso at the end of instruction No. 13 makes erroneous that which was otherwise a correct statement of the law.

█ It does not appear that anything taught by plaintiff in error, assuming that competently it might be so, is within legislative inhibition, or inimical to public health, safety, morals or general welfare. To forbid such teaching, therefore, or to visit criminal prosecutions and penalties because of it, would, as we perceive, not only encroach upon plaintiff in error's right to engage in a lawful activity, but upon the rights of those as well who may wish to pursue the outlined course. The power of the judicial branch of the government, invoked in the circumstances here, may not, as we conceive, fitly be employed to that end. *Chenoweth v. State Board,* 57 Colo. 74, 141 Pac. 132; *Meyer v. Nebrsaka,* 262 U. S. 390, 43 Sup. Ct. 625, 67 L. Ed. 1042; *American School of Magnetic Healing v. McAnnulty,* 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90; *State v. Biggs,* 133 N. C. 729, 46 S. E. 401. Save as to a proviso at the end thereof, italicized by us

for attention when we shall come to discuss another point, the rule is fairly stated by the learned trial judge in instruction No. 13, which reads:

"The Court instructs the jury that the defendant and every citizen of Colorado is vested with the following inherent constitutional rights, of which even the legislature cannot deprive him: To engage in the calling or occupation of teaching any branch or system of learning that is not inherently injurious or that cannot reasonably be regarded as harmful to the public health, welfare, safety or morals; to own, maintain, and conduct an institute or school for the teaching or giving of any kind of instruction in any system of learning whatever that is not inherently injurious to the public health, safety or morals; to charge for his services in the conduct of such school or institute such sums of money as may be agreed upon between himself and the person or persons who might employ him for the purpose of entering his classes to receive and for the receiving of such instruction; and to do any and all things necessary, conducive to or expedient for the explanation, illustration, exemplification, demonstration or application of the principles, laws, and processes involved in or related to the elucidation or transmission of knowledge of such principles, laws, and process that are not inherently injurious or that cannot reasonably be regarded as harmful to the public welfare, safety or morals, whether the same be done for the instruction or enlightenment of actual students in the course of class instruction or for the information of prospective students who desire such information in respect of the nature of the instruction intended or proposed to be given by him or for any other persons when the same is done without any intention, hope or expectation of receiving any fee, gift, or compensation therefor either directly or indirectly, *provided that same is not done with the purpose, intention or expectation of relieving the person who is then being demonstrated upon from any pain, suffering, injury or disease.*"

■ ■ The record considered, we cannot think that plaintiff in error was engaged in the practice of medicine. As to that count of the information, the necessity that he must have engaged in diagnosing was recognized in the charge, and the statutory predicate therefor employs another form of the same word. §4537, C. L. 1921. Clearly, as we conceive, the first and primary concern of the medical practitioner is to ascertain what afflicts his ailing patient—to make diagnosis; he then determines what will remedy the ills of the sufferer, which he proceeds to administer. As we have seen, plaintiff in error gave no thought to single individuals, treated none as such, did not diagnose, administered no specific. "The practice of medicine," as has been judicially defined, "may be said to consist in three things: First, in judging the nature, character, and symptoms of the disease; second, in determining the proper remedy for the disease; third, in giving or prescribing the application of the remedy to the disease." *Underwood v. Scott,* 43 Kan. 714, 23 Pac. 942. "One who does not diagnose does not practice medicine within the meaning of the Medical Practice Act." *People v. Parish,* 59 Cal. App. 302, 210 Pac. 633. See, also, *People v. Wah Hing,* 79 Cal. App. 286, 249 Pac. 229; *Crane v. Johnson,* 242 U. S. 339, 37 Sup. Ct. 176, 61 L. Ed. 348. A medical witness, the secretary-treasurer of the medical examining board, called by the prosecution, testified that in his opinion plaintiff in error was practicing medicine; but, when pressed on cross-examination to explain his view, he said it was based on the statute and "general intelligence." While we think counsel's timely objection to the distinguished medic's competency to testify to the meaning of the statute should have been sustained, and which, although there was final ruling otherwise, was the original view of the trial court, we simply observe that we do not interpret the statute as did the witness. Applying to the record the general intelligence test introduced by the Doctor, we still think plaintiff in error was not practicing medi-

cine. The trial court submitted the question to the jury with misgivings.

The statute invoked in the second count, defines chiropractic as "the science of locating and removing interference with nerve transmission." S. L. 1933, p. 372, c. 49, §2. The record does not disclose that plaintiff in error did or attempted anything within that statutory definition. Clearly, he was not practicing chiropractic. ■■ Considering that in scientific, professional and legislative conception the schools of medicine and chiropractic are wholly different, it is inconceivable, the record in mind, that plaintiff in error violated both statutes. His acts were in contravention of one or the other statute, or of neither, but assuredly not of both. The verdict of guilty returned on either count was equivalent to a verdict of not guilty on the other count. The two verdicts of guilty were at the same time verdicts of not guilty. They were inconsistent and repugnant. Each negatived the other. See *Tobin v. People,* 104 Ill. 565; *Commonwealth v. Haskins,* 128 Mass. 60; *Millsap v. Alderson,* 63 Cal. App. 518, 219 Pac. 469. "No form of verdict will be good which creates a repugnancy or absurdity in the conviction." 2 Bishop's New Crim. Pro. (2d Ed.), p. 885, §1015a (5). The attorney general, citing *Clarke v. People,* 53 Colo. 214, 125 Pac. 113, says that whatever the effect of the inconsistent verdicts otherwise, since the sentences were to run concurrently righteous judgment on one count sustains the whole judgment. The weakness of the position, assuming that the case is in point in other particulars, is that here, not as there, a fine, as well as a jail sentence, was visited on plaintiff in error on each count, not to stand discharged by one payment.

As to the emphasized part of instruction No. 13, we think it made nugatory the well declared principles otherwise appearing in the instruction. The court had correctly advised the jury that plaintiff in error was not to be deprived of his constitutional right to teach any

branch or system of learning "not inherently injurious to the public health, safety or morals," in the course of which he could "do any and all things necessary, conducive to or expedient for the explanation, illustration, exemplification, demonstration or application of the principles, laws, and processes involved in or related to the elucidation or transmission of knowledge of such principles, laws and process, * * * whether the same be done for the instruction or enlightenment of actual students in the course of class instruction or for the information of prospective students who desire such information in respect of the nature of the instruction intended or proposed to be given by him." In brief, the jury was told that plaintiff in error could do that which the record shows he had done, but if there rested in his mind any "purpose, intention or expectation of relieving the person who is then being demonstrated upon from any pain, suffering, injury or disease," illegality and criminality attended throughout. As we have seen, nothing inherently injurious came, or could come, from plaintiff in error's teaching. The proviso, as will be observed, is general. It does not purport to go to some definite disease, pain or injury, concerning which plaintiff in error, by diagnosis or other means whatever, had knowledge and to the specific relief of which he was applying a remedy claimed to be particularly adapted thereto. However plaintiff in error's plan or system may be regarded by the learned and unlearned, it is clear that he taught but one thing—the correct poise of the body and its beneficial effect on general health. He did not profess to cure this man of that disease, but all men, from whatever ailment they suffered, by imparting one principle of universal application. To appraise its value or soundness, on the issues here, is not within the province of courts. The trial court should have granted plaintiff in error's motion for favorable verdicts, and to the end that consistent judgment then to have entered may follow, let the present judgment be reversed.