The PEOPLE of the State of Colorado, ex rel. J.D. McFARLANE, Attorney General and his Successor in Office, Duane Woodard, Complainant-Appellee,

v.

Richard E. PFEIFFER, M.D., F.A.C.O.G., Respondent-Appellant.

No. 84CA0366.

Colorado Court of Appeals, Div. II.

Feb. 20, 1986.

Rehearing Denied April 10, 1986.

Certiorari Denied (People) Sept. 29, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Beverly Fulton Beckett, Asst. Atty. Gen., Denver, for complainant-appellee.

Gorsuch, Kirgis, Campbell, Walker & Grover, John S. Pfeiffer, Ann E. DeVine, Faegre & Benson, Ann E. DeVine, Denver, for respondent-appellant.

PIERCE, Judge.

Richard E. Pfeiffer, M.D. (Dr. Pfeiffer), appeals from an order of the State Board of Medical Examiners (Board), which found that he had committed "two or more acts or omissions which failed to meet generally accepted standards of medical practice in violation of [§ 12-36-117(1)(p), C.R.S.] ...." We set aside the order.

Specifically, the Board found that, in the treatment of one of his obstetric patients, the following acts constituted substandard medical practice: (1) "Dr. Pfeiffer failed to obtain adequate information from the labor and delivery personnel regarding the fetal heart rate before ordering administration of terbutaline at 2:00 A.M. and 3:29 A.M., and the administration of morphine at 2:00 A.M."; (2) Dr. Pfeiffer "ordered the administration of terbutaline at 2:00 A.M. and again at 3:29 A.M., without adequately evaluating the patient"; (3) Dr. Pfeiffer "ordered the administration of morphine ... at 2:00 A.M. without adequately evalu-ating the patient"; (4) Dr. Pfeiffer "failed to personally evaluate [the patient] and the status of her fetus ...."

These findings stem from the doctor's apparent misdiagnosis and treatment of a patient who was admitted to a hospital on May 26, 1980, at approximately 4:40 P.M. for observation and evaluation of signs of active labor. During the course of that evening and the following morning, Dr. Pfeiffer evaluated his patient and maintained telephone communication with the nursing staff on duty. Nevertheless, the following morning at approximately 8:12 A.M., a stillborn male infant was delivered from the patient by Dr. Pfeiffer.

The Board may discipline a physician for unprofessional conduct which is defined in § 12-36-117(1), C.R.S. (1985 Repl. Vol. 5). The pertinent definition here requires "two or more acts or omissions which fail to meet generally acceptable standards of medical practice." Section 12-36-117(1)(p), C.R.S. (1985 Repl. Vol. 5). Thus, the statute clearly requires multiple acts of substandard care. *See Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979).

The critical issue here is whether the Board's conclusions point to one incident of substandard practice or treatment, or whether they in fact constitute multiple acts of unprofessional conduct.

We first conclude that the Board's sanctioning of Dr. Pfeiffer for failing to evaluate his patient's condition or to obtain adequate information regarding her condition, before beginning the medication at 2:00 A.M. and continuing the medication, thereafter, are part and parcel of each other and could not be separated logically so as to constitute two or more acts. Second, the words of the statute requiring two or more acts of substandard *"medical practice"* point to a continued course of conduct, rather than to two or more administrations of medication within the course of treatment of a specific medical problem.

Significantly, the statutory section defining the term "practice of medicine" includes "suggesting, recommending, pre-

scribing, or administering any form of treatment, operation, or healing ...." Section 12–36–106(1)(b), C.R.S. (1985 Repl. Vol. 5). Thus, the practice of medicine encompasses a continuing process of treatment and healing, not just isolated moments or acts within a course of treatment. This definition is consistent with the judicial definition stated in *Hurley v. People*, 99 Colo. 510, 63 P.2d 1227 (1936), in which the term was said to consist of three things:

> "First, in judging the nature, and symptoms of the disease; second, in determining the proper remedy for the disease; third, in giving or prescribing the application of the remedy to the disease."

Thus, an act of medical practice may subsume within itself a diagnosis, a determination of treatment, as well as the treatment itself. This is so, because a misdiagnosis will more than likely lead to a faulty concomitant treatment. Where, as here, the practice complained of is a continuum subsumed within the initial failure to evaluate adequately the patient's condition, it becomes a single act of medical practice.

We do not interpret the word "acts" as requiring that the performance of a physician or his execution of treatment be broken down to individual minute-by-minute steps. Rather, when reading the statutes as a whole, in combination with the term "medical practice," we interpret the term "acts" to encompass a course of conduct, a process, an engagement in treating a patient. We do not rule that a "pattern" must be established, as under the previous statute, but rather we recognize the ongoing nature of acts of medical practice.

Under the facts of this case, Dr. Pfeiffer's treatment of the patient during that one night was one continuous sequence of events, a single course of conduct on his part which he undertook in treating the patient. Thus, the Board's findings would support a conclusion only that Dr. Pfeiffer had failed in one instance to meet the applicable standards of medical practice, and accordingly, no sanction was warranted.

The Board argues that a succession of mistakes qualifies as being several acts, and they cite *Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982). *Lee* is inapposite here. There, the court upheld the Board's findings of "negligent malpractice" under the Dental Practice statute. However, neither that governing statute, § 12–35–118(1)(e), C.R.S. (1978 Repl. Vol. 5), nor the commonly-understood meaning of that term, as noted in *Lee*, requires two or more acts as is required here.

Because of our disposition of this case, we need not reach the other contentions raised by Dr. Pfeiffer.

The order of the Board is set aside.

BERMAN and TURSI, JJ., concur.