## STATE V. YEGGE.

1. A person engaged in fitting glasses to the eye prefixed to his name the title "Dr." on his sign, and on a notice explaining the science of ophthalmology, stating that by its assistance certain ailments would be cured without drugs or operations. The evidence tended to prove that ophthalmology is the science treating of diseases of the eye, and that the fitting of glasses for the relief of defective eyesight is a branch of the practice of medicine. Held, that he practiced medicine within Laws 1903, p. 202, c. 176, regulating the practice of medicine, and declaring every person prefixing the title "Dr." to his name, or professing to be a physician, or prescribing any drug, "medicine, apparatus or other agency" for the care of any ailment, shall be regarded as practicing within the meaning of the act.

2. The Legislature, in carrying into effect the act regulating the practice of medicine (Laws 1903, p. 206, c. 176), had the right to define, as it assumed to do in section 21 of the act, what evidence shall be deemed sufficient to show a practitioner of medicine within the meaning of the act.

(Opinion filed April 5, 1905.)

Error to circuit court, Beadle county; Hon. CHARLES S. WHITING, Judge.

M. F. Yegge was convicted of practicing medicine without a license, and he brings error. Affirmed.

*T. H. Null*, for plaintiff in error.

*Philo Hall*, Atty. Gen. (*Aubrey Lawrence*, of counsel), and *C. A. Kelley*, for the State.

CORSON, P. J. Upon an information duly filed, the plaintiff in error was tried and convicted of the offense of practicing medicine without a license.

It is contended by the plaintiff in error that the evidence was insufficient to warrant his conviction, in that it failed to

show that he was practicing or attempting to practice medicine within the provisions of the act of 1903, and that he was simply engaged in the business of fitting glasses to the eye. It was proven by the evidence of Dr. McNutt, secretary of the board of medical examiners, that no license had been granted to the plaintiff in error. The state then introduced in evidence the following notice, marked "Exhibit 1": "Ophthalmology. A Science for the Analysis of the Cause of Human Ills and How to Abolish Them. Everybody should know that this is a science that practices by guesses. It differentiates between functional derangements and disease. By its assistance nature cures cross-eyes, without operation; headache without drugs; hysteria without a straight jacket; female disorders without a trip to the hospital; and hundreds of nervous troubles. Simply removing causes is the secret. A true Ophthalmologist explains your case to you. Dr. M. F. Yegge, Huron, S. D. Office rooms over Huronite." There was also evidence tending to prove that the plaintiff in error had a sign in front of his office with the name "Dr. Yegge" thereon. There was also evidence tending to prove that ophthalmology is the science which treats of the physiology, anatomy, and diseases of the eye; that any deformity in the eye is considered a disease of the eye; any abnormal condition of the eye should be considered as a disease; that it is so considered by the profession; and that the fitting of glasses for the relief of defective eyesight is a branch of the practice of medicine. The defendant, being called as a witness in his own behalf, testified, in substance, that he had lived in Huron since the 1st of June, 1903; that he was engaged in optics; that he had an office in the James Valley Bank Building; that he was a graduate of the McCormick

School of Ophthalmology of Chicago, Ill., where they teach ophthalmology particularly; that it had been established 12 or 13 years; that it is a reputable school; that they issued diplomas to those taking a full course; that the degree of ophthal· mology is conferred; that he received a regular course diploma, and graduated in ophthalmology—the fitting of glasses; that the degree of doctor of ophthalmology was conferred upon him, and that he had a diploma, which he produced; that no disease was treated by him, by the use of medicine; that they were not instructed to treat any disease by the use of medicine in that college; that the course of education in that college was purely nonmedical; and that they learned to correct errors in refraction by test. On cross examination he stated that he took the course of a graduate, a two-weeks course—a little over two weeks. He also testified that he studied anatomy and physiology of the eye for about two years; that previous to going to the school he studied for about a year in Iowa; that he was in a doctor's office, where he made a specialty of refraction. Chapter 176, p. 202, of the Laws of 1903, provides for creating a board of medical examiners, defines their duties, empowers them to grant licenses to qualified applicants, and prescribes penalties for practicing without such a license. Section 21 provides as follows: "When a person shall append or prefix the letters M. B., or M. D., or the title Dr. or Doctor or any other sign or appellation in a medical sense to his or her name or shall profess publicly to be a physician or surgeon, or who shall recommend, prescribe or direct for the use of any person any drug, medicine, apparatus or other agency for the cure, relief or palliation of any ailment or disease of the mind or body, or

for the cure or relief of any wound, fracture or bodily injury, or deformity after having received or with the intention of receiving therefor, either directly or indirectly, any bonus, gift or compensation, (he or she) shall be regarded as practicing within the meaning of this act." It will be observed that it is provided by the above section that: "When a person shall append or prefix the letters M. B., or M. D., or the title Dr. or Doctor or any other sign or appellation in a medical sense to his or her name or shall profess publicly to be a physician or surgeon, * * * [he or she] shall be regarded as practicing within the meaning of this act." The evidence seems to be uncontradicted that the plaintiff in error did, upon a sign in front of his office, and in the notice published, prefix to his name the letters "Dr." and it is quite clear from the evidence that they were used in a medical sense, and we are of the opinion that the jury were fully justified in so regarding them.

The Legislature evidently intended, in enacting the law, to prevent persons not properly educated in the science of medicine from assuming to act as a physician, and to protect the public, and it has deemed it proper that every person assuming to act as a physician or surgeon should be properly licensed. In carrying into effect this law, it was competent for the Legislature to define, as it has assumed to do in section 21, what evidence shall be deemed sufficient to constitute a practitioner within the meaning of the act. In view of the testimony of the physicians as to the proper definition of ophthalmology, it is quite clear from the advertisement of the plaintiff in error that he had assumed to hold himself out as a physician within the meaning of the act. And it is not only clear from the language of the advertisement itself, which would be gen-

erally understood as an assumption on his part of being a regular physician, or at least a specialist in that branch of medicine treating of ophthalmology, but the Legislature has declared that prefixing the term "Dr." to his name shall be so regarded. The law should not be so construed as to deprive the people of the benefits intended by the act, but such a construction should be given it as to carry into effect the evident intention of the Legislature. See American & English Ency. Law, book 22, p. 786, and cases there cited.

Finding no error in the judgment of the circuit court, the same is affirmed.