STATE, RESPONDENT, *v.* SHELDON, APPELLANT.

(No. 3,895.)

(Submitted November 5, 1917.   Decided November 13, 1917.)

[169 Pac. 37.]

*Criminal Law—Mayhem—Information—Sufficiency—Insanity—
Uncontrollable Impulse—Evidence—Offer of Proof—Animus
of Witnesses—Harmless Error—Instructions.*

Mayhem—Information—Sufficiency.
  1.  *Held,* that the right testicle of a male human being is a "member
  of the body," within the meaning of section 8304, Revised Codes,
  defining the crime of mayhem.
  [As to what constitutes mayhem, see note in 65 Am. St. Rep. 771.]

Same—Insanity—Uncontrollable Impulse—Evidence.
  2.  Defendant having testified to an uncontrollable impulse to commit
  the act of mayhem and the causes thereof, one of which was certain
  information imparted to him by the prosecuting witness touching de-
  fendant's family, questions designed to bring out the accuracy of such
  information were immaterial, the material fact being that he had such
  information.

On the question as to whether irresistible impulse is excuse for crime, see
notes in 18 L. R. A. 224; 27 L. R. A. (n. s.) 461.
On burden of proof as to sanity, see note in 36 L. R. A. 726; 44 L. R. A.
(n. s.) 119.

Same—Cross-examination—*Animus* of Witness—Harmless Error.
  3.  Refusal to require a medical expert to answer questions put to him by defendant's attorney on cross-examination and designed to search his *animus* in testifying, *held* harmless error where several other experts, unchallenged for bias, had testified to the same matters as he had done.

Same—Instructions—Proper Refusal.
  4.  An instruction postulating facts not shown by the evidence and authorizing indefinite and misleading inferences was properly refused.

Same—Insanity—Burden of Proof—Correct Instruction.
  5.  An instruction that, the law presuming every person to be sane, the burden of presenting the issue and of furnishing evidence sufficient to raise a reasonable doubt upon the subject, is upon the accused person claiming insanity as a defense, was correct.

Same—Insanity—Burden of Proof—Harmless Error.
  6.  An instruction relative to the burden of proof on the issue of insanity, which employed the word "guilt" for the word "insanity," *held* harmless, if error, in view of the whole charge submitted to the jury.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

CHAUNCEY A. SHELDON was convicted of mayhem, and from the judgment and order denying him a new trial he appeals. Affirmed. ·

*Mr. Wellington D. Rankin,* for Appellant, submitted a brief and argued the cause orally.

The court's instructions on the burden of proof on the question of insanity were erroneous and conflicting. It is well settled in this state that when conflicting propositions of law are given to a jury on a material point, one of which is correct and the other incorrect, as here, the error is fatal. (*State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169; *State* v. *McClellan,* 23 Mont. 532, 75 Am. St. Rep. 558, 59 Pac. 924; *State* v. *Jones,* 48 Mont. 505, 139 Pac. 441; *People* v. *Ross,* 19 Cal. App. 469, 126 Pac. 375; *State* v. *Thompson,* 31 Utah, 228, 87 Pac. 709; *State* v. *McPherson,* 72 Wash. 371, Ann. Cas. 1914D, 587, 130 Pac. 481; *Jones* v. *State,* 89 Ark. 213, 116 S. W. 230; *Danford* v. *State,* 53 Fla. 4, 43 South. 593; *Barrett* v. *State,* 55 Tex. Cr. 182, 115 S. W. 1187.)

The court erred in excluding the evidence offered to show that the complaining witness had borrowed money from de-

fendant's wife. It should have gone to the jury as bearing on the condition of the defendant's mind at the time the act was committed and as corroborating the testimony of the defendant. (7 Ency. of Evidence, 449; *People* v. *Hoch,* 150 N. Y. 291, 44 N. E. 976, 981; *People* v. *Wood,* 126 N. Y. 249, 27 N. E. 362; *State* v. *Constantine,* 48 Wash. 218, 93 Pac. 317; *State* v. *Bradley,* 120 La. 248, 45 South. 120.)

It is always proper to show the interest of a witness in the result of a case for the purpose of affecting his credibility. For that purpose it is competent to show that the witness has been promised pay for testifying. (3 Ency. of Evidence, 769, 771; 40 Cyc. 2489; 1 Wharton's Criminal Evidence, 1011; *State* v. *Wakely,* 43 Mont. 427, 117 Pac. 95; *People* v. *Rice,* 130 Mich. 350, 61 N. W. 540; *State* v. *Krum,* 32 Kan. 372, 4 Pac. 621; *State* v. *Collins,* 33 Kan. 77, 5 Pac. 368.)

Applying the facts set out in the information to the common-law definition of mayhem, it follows that it does not state facts sufficient to constitute the crime of mayhem. (3 Cooley's Blackstone, sec. 121; 4 *Id.,* sec. 205.) It is a matter of common knowledge that the removal of a testicle does not render a person the less able to fight, either on the defensive or offensive. (3 Wharton & Stilles Medical Jurisprudence, 124.)

In some of the states, statutes have been enacted enlarging upon the common-law definition of mayhem, for the purpose of embracing a situation as set out in the information in this case, but in Montana no such statute has been enacted, and the statute simply embraces the common-law definition of mayhem.

It is a question for the jury as to whether the right testicle is a member of the body. (*Slattery* v. *State,* 41 Tex. 619; *High* v. *State,* 26 Tex. App. 545, 8 Am. St. Rep. 488, 10 S. W. 238.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for the State, submitted a brief; *Mr. Woody* argued the cause orally.

We understand the law to be well settled in this state that when a person is charged with the commission of a crime, the

burden of proof rests with the state to prove beyond a reasonable doubt every essential ingredient of the crime charged, but when a defendant interposes an affirmative defense, such as alibi or insanity, then the burden is on the defendant to introduce evidence sufficient to raise a reasonable doubt as to his guilt, and when such evidence has been introduced by the defendant, then the burden shifts to the state to rebut this proof and establish the guilt of the defendant beyond a reasonable doubt. (*State* v. *Felker*, 27 Mont. 451, 71 Pac. 668; *State* v. *Halk*, 49 Mont. 173, 141 Pac. 149.)    And from the decisions of this court in the cases of *State* v. *Peel*, 23 Mont. 358, 59 Pac. 169, *State* v. *Crowe*, 39 Mont. 174, 18 Ann. Cas. 643, 102 Pac. 579, and *State* v. *Leakey*, 44 Mont. 354, 120 Pac. 234, we also understand the rule to be, in a case where a defense of insanity is interposed, that in its case in chief the state must prove, beyond a reasonable doubt, every essential ingredient of the crime charged, but the presumption of law being that the defendant is sane, the state is not required in its case in chief to introduce evidence to prove the sanity of the defendant, the burden being on the defendant to introduce proof sufficient to raise a reasonable doubt as to his sanity.    When, however, the defendant has introduced proof sufficient to raise a reasonable doubt as to his sanity, the burden then shifts to the state, and it must then rebut such proof and establish by proof beyond a reasonable doubt the sanity of the defendant.    In other words, it is not required of the state in the first place to prove the sanity of the defendant beyond a reasonable doubt, but it is only when the defendant has introduced proof sufficient to raise a reasonable doubt as to his sanity that the state is required to prove the sanity of defendant beyond a reasonable doubt.

When a witness is called as an expert witness, who has no knowledge and does not profess to testify regarding any facts connected with the case, but testifies merely as an expert in answer to hypothetical questions propounded to him, the matter of permitting him to testify as to the amount he is to receive for testifying as an expert is largely within the discretion of the

court.   (*Kerfoot* v. *City of Chicago,* 195 Ill. 229, 63 N. E. 101;
*Shaughnessy* v. *Holt,* 236 Ill. 485, 21 L. R. A. (n. s.) 826, 86
N. E. 256.)

Under the common law, depriving a person of or disfiguring such
of his members as might render him the less able in fighting was
mayhem, but was not a felony, while castration was not only
mayhem, but was a felony.   (4 Cooley's Blackstone, 206; Coke's
Institutes, 62; 1 Wharton's Criminal Law, sec. 766.)

MR. JUSTICE SANNER delivered the opinion of the court.

On and prior to November 15, 1915, Chauncey A. Sheldon, with
his wife, kept an employment office in the city of Helena.   On
the night of that day Sheldon encountered one T. M. Gerety in
the office, seized Gerety, bound him, and deprived him of his
right testicle.   Sheldon claims that Gerety had been infesting
the office, courting Mrs. Sheldon, taking her to shows and upon
picnics; that he had been told of Gerety's borrowing money from
Mrs. Sheldon and from the oldest Sheldon girl; had heard of a
design by Gerety to burn the Sheldon home, and believed that
Gerety was trying to induce Mrs. Sheldon to elope; that he had
seen Gerety try to kiss the oldest Sheldon girl, had seen Gerety
wearing Mrs. Sheldon's sweater, had seen photographs showing
Gerety with his arm around Mrs. Sheldon, and had just before
the operation found the two together on a bed in the room back
of the office; that he had cut Gerety during and because of an
irresistible impulse, or, as he put it: "When you caught a man
in the way I had caught him and seen all that I had seen, I just
couldn't help it."   Other testimony tended to show that no
illicit relations existed between Gerety and Mrs. Sheldon, and
that Sheldon had not found them together at all on the night
of November 15, but had sent for Gerety to come to the office,
and on his arrival and at the point of a revolver compelled
Gerety to submit to the operation.   For this act Sheldon was
accused, tried and convicted of the crime of mayhem, and he
appeals from the judgment of conviction and also from an order
denying his motion for new trial.   The assignments argued

present: The sufficiency of the information, certain rulings excluding evidence, certain instructions given and refused, and certain remarks of the court made in the course of the trial claimed to be prejudicial.

1. The sufficiency of the information depends upon whether [1] the right testicle of a male human being is "a member of his body" within the meaning of section 8304, Revised Codes defining the crime of mayhem. We think it so obviously is that any discussion of the matter is unnecessary. The contention that it is not is based upon the claim that at common law the only members of the body within the definition of mayhem are those directly useful in fighting—such as to enable one to defend himself or to annoy his adversary. However this may be—and there is room for doubt about it (4 Blackstone, 206; 1 Wharton's Criminal Law, sec. 766)—the answer is that our statute is not so restricted. (*Kitchens* v. *State,* 80 Ga. 810, 7 S. E. 209; *Godfrey* v. *People,* 5 Hun (N. Y.), 369; *People* v. *Golden,* 62 Cal. 542.)

2. The rulings upon evidence complained of consist in refusing to require answers to certain questions asked Gerety on his direct examination as a witness for the appellant, and certain questions propounded the witness Dr. Brooke.

The subject matter of the questions asked Gerety was whether [2] he had borrowed money from Mrs. Sheldon, whether just before the castration he had told Sheldon of that fact, had told of improper advances made to Sheldon's daughter, and had admitted that he (Gerety) "had planned some matter with reference to insurance and a fire in connection with his home up there." It will be observed that these questions called for one fact (the borrowing) and three statements by Gerety, and they were asked upon the theory that, defendant having testified to a disordered state of mind resulting in uncontrollable impulse to do the act charged, it was proper to show a cause in fact for such a state of mind. The trial court was of the view that, the defendant having stated the existence of his impulse and the causes thereof, the accuracy of his information as one of

such causes was not material, but merely the fact that he had such information. We think this was correct; but in any case, and upon his own theory, the appellant would not be advantaged, because the questions, poorly calculated to elicit any very definite information, were unaided by any offers of proof to show the scope and value of the evidence sought, and because the defendant's own testimony tends to exclude the borrowing of money from Mrs. Sheldon and the supposed statements of Gerety just before the operation from among the causes of his uncontrollable impulse.

The questions asked the witness Dr. Brooke were offensive in [3] tone, and they came at the close of a long cross-examination in which the witness and appellant's counsel failed to agree in their medical views. These facts doubtless led the court to believe the questions were not honestly intended, and thus to sustain the objections to them. Theoretically, however, they were designed to search the *animus* of the witness. The appellant was therefore entitled to ask them and to have them answered. But we do not think the error thus committed a sufficient reason for reversal. The witness was called as a medical expert for the state to express an opinion merely, based upon asserted facts which to him were purely hypothetical; other experts, unchallenged for bias, testified to the same effect, so that similar evidence, not even remotely tainted with interest or prejudice, remained in the record. In this situation it is hard to believe that the appellant could have suffered any substantial harm from these particular rulings.

3. The assigned errors upon instructions relate to a refusal of appellant's offered instruction No. 5 and the giving of the court's instructions Nos. 12, 13 and 15. The refusal of offered [4] instruction No. 5 was entirely proper; it postulates facts not shown by the evidence; it authorizes inferences which are indefinite and misleading; and the substance of it, so far as proper to be given, was fairly covered elsewhere in the charge.

Instructions 12 and 13 do at first blush seem to impose upon [5] appellant the burden of proving his insanity. Properly

read, however, they amount to nothing more than to assert that, the law presuming every person to be sane, the burden of presenting the issue and of furnishing evidence sufficient to raise a reasonable doubt upon the subject is upon the accused person claiming insanity as a defense, which is entirely correct. (*State v. Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169; *State v. Leakey,* 44 Mont. 354, 120 Pac. 234; *State v. Halk,* 49 Mont. 173, 141 Pac. 149.)

It is true that instruction No. 13 uses the word "guilt" instead of the word "insanity"; but in this the court is justified [6] by what was said in *State v. Crean,* 43 Mont. 47, 55, Ann. Cas. 1912C, 424, 114 Pac. 603, and we are convinced that the instruction, taken in connection with the whole charge, could not have misled the jury.

Instruction No. 15 is unexceptionable. (*State v. Peel, supra.*)

4. We have considered the remarks of the court assigned as prejudicial, but are unable to see that they command a reversal of the case.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.