## RUBIN v. UNITED STATES.

Court of Appeals of District of Columbia.

Argued December 2, 1929. Decided January 6, 1930.

No. 5017.

R. M. Hudson, of Washington, D. C., for plaintiff in error.

Leo A. Rover and Charles B. Murray, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Writ of error to the police court, where plaintiff in error was convicted of practicing medicine without a license, prior to the passage of the Act of February 27, 1929 (45 Stat. 1326), entitled "An Act To regulate the practice of the healing art to protect the public health in the District of Columbia."

Section 13 of the Act of June 3, 1896 (29 Stat. 198), entitled "An Act To regulate the practice of medicine and surgery, to license physicians and surgeons, and to punish persons violating the provisions thereof in the District of Columbia" (under which this prosecution was brought), so far as here material, provides: "Any person practicing medicine and surgery or midwifery in the District of Columbia, or who shall publicly profess to do so, without first having obtained from the board of medical supervisors of the District of Columbia a license ※ * * shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished for each offense by a fine of not less than fifty nor more than five hundred dollars, or by imprisonment in the District jail for a period of not less than ten nor more than ninety days, or by both such fine and imprisonment." The section further provides that "it shall be the duty of the United States district attorney for the District of Columbia to prosecute all violations of the provisions of this Act."

Section 12 expressly provides "that this Act shall not apply * * * to the practice of massage or the so called Swedish movement cure. * * *"

The evidence for the prosecution was substantially as follows: Antoinette Weigal testified that she went to see Rubin and told him she had sleeping sickness; that he stated he could cure her within two weeks; that she was in his hospital two weeks, and that "Rubin did not do anything but apply something like vaseline with his hand on her

body"; that he stated "he got the liquid from India by aeroplane."

The testimony of the father and mother of the witness was to the same effect, except that the mother stated "that there were large marks on her daughter's back and legs from the stuff Rubin rubbed on her"; and that, when the mother asked Rubin about the pain which her daughter suffered, he replied: "Oh, the germ has been killed. She has no germ any more. I could stop that but I do not want to stop that because it would not be good for her condition."

Mrs. Clementine Koon testified that before submitting to treatments by Rubin she made inquiries about him and went to see Dr. W. E. Philes, a duly licensed practicing physician; and also that she saw a letterhead used by Rubin, containing a copy of a District license to maintain a private hospital "Under General Management of Prof. B. Rubin. Under Supervision of Dr. W. E. Philes." She further testified that Rubin was called a doctor, and that he stated that "she had arthritis and treated her by dabbing liquid on her whole body with his hand which badly burned her, leaving scars on her body"; that Rubin told her he got the liquid from India. A sister of Mrs. Koon testified that Rubin told her he was a doctor.

Mrs. Elizabeth Davis testified that Rubin told her he was a doctor and that he promised to cure her daughter for $300; "that Rubin made a number of applications of liquid to the body of the child. That he rubbed liquid all over her with his hand, that the child was severely burned."

For the defense, Dr. Philes testified "that Rubin Health Institute has him as a physician, and that he was called in for consultation upon occasion when any patient needed medicine."

Other witnesses testified to the effect that Rubin had given them "his massage treatment with his liquid," and that they had been benefited thereby.

Plaintiff in error contends that his motion for a directed verdict, both at the close of the evidence for the prosecution and at the close of all the evidence, should have been granted.

The Act of June 3, 1896 (29 Stat. 198), makes it a misdemeanor for any person to practice *"medicine,"* or publicly to profess to do so, without a license. In the absence of a definition in the statute, we are remitted to the general understanding as to the meaning of the term "practicing medicine." Springer v. District of Columbia, 23 App. D. C. 59. "The practice of medicine is a pursuit very generally known and understood and so also is that of surgery. The former includes the application and use of medicines and drugs for the purpose of curing, mitigating or alleviating bodily diseases. * * *" Smith v. Lane, 24 Hun (N. Y.) 632; Nelson v. State Board of Health, 108 Ky. 769, 57 S. W. 501, 504, 50 L. R. A. 383. There is nothing in the Act of 1896 evidencing a legislative intent that the term "practicing medicine" should bear other than its common meaning. It will be observed that the Act of February 27, 1929 (45 Stat. 1326), embraces "the practice of the healing art," instead of merely "the practice of medicine and surgery."

Under section 12 of the Act of 1896, any person may engage in "the practice of massage" without a license. The meaning of that term also is left to common understanding, since the act does not define it. Webster thus defines it: "Massage: A method of treating the superficial soft parts of the body for remedial or hygienic purposes, consisting in rubbing, stroking, kneading, tapping, etc., with the hand or an instrument; med., to treat by means of massage; to rub or knead; as, to *massage* a patient with ointment."

Having in mind the meaning of the terms "practicing medicine" and "the practice of massage," and that Congress expressly excepted the latter from the provisions of the act, we come now to determine whether under the evidence it can reasonably be said that Rubin either practiced medicine or publicly professed to do so.

At the outset, it may be observed that he was charged with practicing medicine without a license, and not with fraudulent conduct. No witness testified that Rubin made any examination of persons treated; nor is there any testimony that his treatments amounted to anything more than applying or rubbing "something like vaseline" over the body; nor is there any evidence that he professed to do more than massage with his ointment. The fact that he called himself a "doctor" is of little significance, for, as stated by Dr. Philes in his testimony, "the word Doctor does not without an explanation mean anything in particular as it is used by osteopaths, veterinarians, chiropractors, dentists, athletic instructors and others." The fact that Rubin "stated to one witness that she had arthritis" is of no par-

ticular significance, in view of the fact that he made no examination of her. It amounted to nothing more than an expression of opinion, and to characterize it as a diagnosis would accord it undue dignity.

But it is said that Rubin made statements as to the efficacy of his particular kind of massaging. Presumably, when Congress in the Act of 1896 permitted the practice of massaging, both common and Swedish, without a license, it did so upon the theory that such practice would be beneficial. Rubin had a legal right to practice massaging, and it would be a strained and unreasonable construction of the act to hold that he was without right to express his opinion as to the beneficial results of the treatment.

We conclude that the motion for a directed verdict should have been granted.

The judgment is reversed, and the cause remanded, with instructions to discharge plaintiff in error.

Reversed.