THE STATE OF MONTANA, Plaintiff and Respondent, v. ALAN R. BAIN, Defendant and Appellant.

No. 9516.

Submitted October 28, 1955. Decided March 29, 1956.

295 Pac. (2d) 241.

Mr. Jerry J. O'Connell, Great Falls, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Louis Forsell, Asst. Atty. Gen., Mr. Richard V. Bottomly, Co. Atty., and Mr. Leo

Graybill, Jr., Deputy Co. Atty., Great Falls, for respondent.

Mr. Graybill and Mr. Forsell argued orally.

MR. JUSTICE DAVIS:

The appellant Bain (hereinafter defendant) was sentenced by the district court for Cascade County to pay a fine of $650 upon the verdict of a jury finding him guilty of practicing medicine without the certificate required by R.C.M. 1947, section 66-1007. His motion for a new trial was denied. His appeal here is from the final judgment below and as well from the order denying him a new trial. The record before us contains the judgment roll and a bill of exceptions, which includes the evidence and other proceedings had at the trial.

To sustain his appeal the defendant specifies five errors, which fairly present three questions for our consideration, none of which touches the constitutionality of the statute or the sufficiency of the information, viz.,

(1) Is the evidence sufficient (a) to make a case for the jury, and (b) to sustain the verdict and judgment?

(2) Should the defendant's offered instruction No. 3 have been given?

(3) Should the testimony of certain witnesses for the defendant, which tended to show the type of treatment he gave, have been received on the trial?

We shall take up these questions in the order of their statement.

(1) The substance of the charge laid in the information is that the defendant Bain practiced medicine in violation of the statute, section 66-1007, "by appending or affixing the title 'Dr.' or 'Doctor' in a medical sense to his name." This is a misdemeanor, unless at the time Bain held a certificate from the State Board of Medical Examiners authorizing him to practice medicine or surgery. Admittedly he had no such certificate as the testimony of Dr. Cooney for the prosecution shows.

Consequently in determining (a) whether the evidence for

the state was sufficient to take the case to the jury, and (b) whether the evidence as a whole sustains the verdict of the jury that the defendant is guilty, we are limited to the single fundamental inquiry, viz., Is there substantial evidence that the defendant did in fact use the prefix "Doctor" or its abbreviation in a medical sense in connection with his name? If so, the state made out a case for the jury; and their verdict is sustained by the evidence. Also it is then wholly immaterial and beyond the scope of our review on this appeal that the same offense may be committed in other ways consistent with other provisions of section 66-1007.

With this limitation in mind we turn first to the state's case. There we find substantial evidence from which the jurors were justified in finding, as apparently they did find, that the defendant affixed the title "Dr." to his name (1) in a letter signed by him which was addressed to, and received by, the Bureau of Vocational Rehabilitation at Helena, Montana; (2) in an advertisement appearing in the Polk City Directory for Great Falls, Montana; and (3) in a sign or lettering which appeared on a window of the office occupied by him at 112 Central Avenue in that city.

To show that this use by the defendant of the prefix "Dr." was "in a medical sense," the State also introduced further substantial evidence from which the jury were entitled to find (1) that in the Great Falls Directory Bain advertised he was a physiotherapist, a heart specialist and a general practitioner, and (2) accordingly carried a listing in that directory as a physiotherapist. Other evidence for the state is presently not important.

For the state's proof, which we have summarized, by itself ▉ and without more makes out a prima facie case that the defendant violated section 66-1007, i. e., if the practice of physiotherapy constitutes, as we think it does, the practice of medicine under Montana law. The defendant's motion to dismiss made at the close of the state's case was accordingly rightly denied; a conclusion which we reach without touching upon

the preliminary question whether this motion was waived when the defense introduced evidence which strengthened rather than weakened the proof for the prosecution.

Specifically, when the defendant as Dr. Alan R. Bain advertised that he was a physiotherapist, a heart specialist and a general practitioner, he said he was a doctor engaged in the general practice of physiotherapy with particular attention to the heart. Here he told the public in effect that he, Dr. Bain, treated disease and ailments of the human body, particularly of the heart, by prescribing and using physical agents such as light, heat, cold, water, electricity and massage. For such is the commonly accepted meaning of the word "physiotherapist," or practitioner of "physical therapy," as this branch of the healing art is also known. See Blakiston's New Gould Medical Dictionary (1st Ed.) page 1054: "therapy," "physical therapy;" page 599: "medicine," "physical medicine;" Webster's New International Dictionary, 2d Ed. page 1852: "physical therapy;" 70 C.J.S., Physicians and Surgeons, section 1, page 815; People v. Mari, 260 N.Y. 383, 385, 183 N.E. 858; O'Neill v. Board of Regents, 272 App. Div. 1086, 74 N.Y.S. (2d) 762; People v. Dennis, 271 App. Div. 256, 66 N.Y.S. (2d) 912, 915.

But the practice of medicine includes the practice generally of the healing art in any of its branches. See "medicine," Blakiston's New Gould Medical Dictionary (1953), page 599; Webster's New International Dictionary, 2d Ed., page 1527; Commonwealth v. Zimmerman, 221 Mass. 184, 108 N.E. 893, Ann. Cas. 1916A, 858; State v. Borah, 51 Ariz. 318, 321, 322, 76 Pac. (2d) 757, 115 A.L.R. 254; Vest v. Cobb, 138 W. Va. 660, 673, 76 S.E. (2d) 885; Hurley v. People, 99 Colo. 510, 516, 63 Pac. (2d) 1227; Kahn v. Metropolitan Life Ins. Co., 132 N.J.L. 503, 505, 41 A. (2d) 329; Burke v. Kansas State Osteopathic Ass'n., Inc., 10 Cir., 111 F. (2d) 250, 253, citing and applying State v. Johnson, 84 Kan. 411, 417, 114 Pac. 390, 41 L.R.A., N.S., 539; Waldo v. Poe, D.C. Wash., 14 F. (2d) 749, 753; Lowman v. Kuecker, Iowa, 71 N.W. (2d) 586. Compare State v. Thierfelder, 114 Mont. 104, 118, 119, 132 Pac. (2d) 1935.

And since physiotherapy is a branch of the healing art, to practice physiotherapy is accordingly to practice medicine. People v. Mari, supra; O'Neill v. Board of Regents, supra; People v. Dennis, supra.

When then the defendant prefixed the title "Dr." to his ▮ name in such a context that read with the other words used in his advertisement he fairly conveyed the meaning he was a doctor engaged in the general practice of physiotherapy with particular attention to the heart it was competent for the jury to find that he used the prefix "Dr." in a medical sense within the prohibition of section 66-1007, because thereby he professed to be a doctor practicing a recognized branch of the healing art. At least in this advertisement we find substantial evidence for the jury, from which they were entitled to find that the charge in the information was true. The issue here tendered was clearly for them to resolve. Compare State v. Yegge, 19 S.D. 234, 103 N.W. 17, 69 L.R.A. 504.

Summarized the defendant's argument to the contrary is ▮ that the practice of physiotherapy includes the use of neither drugs nor medicines nor the surgeon's knife. Therefore, he says, by advertising that he practiced physiotherapy he did not advertise that he practiced medicine within the meaning of our statute. Hence he did not affix the title "Dr." to his name in a medical sense, is innocent of any violation of section 66-1007; and the state has failed to make out its case.

Of course, if the premise put for the conclusion drawn is sound, the state's case fails. But as we have already indicated by what we have written heretofore in this opinion, we do not think the premise sound. It follows that we disagree with the conclusion counsel reach. Moreover, we do not think that conclusion finds support either in our statute or in the defendant's citations, which in our view are not in point under our statute, or in accord otherwise with the weight of authority as we read the decided cases, some of which we have already noted.

In this court there is no controlling decision construing section 66-1007. But if we turn initially to the language of that

section for a statutory definition of what constitutes the practice of medicine, as the defendant contends we should, we read there that a person practices medicine who recommends, prescribes, or directs, ''for the use of any person, any drug, medicine, appliance, apparatus, or other agency * * * for the cure, relief, or palliation of any ailment or disease of the mind or body,'' etc. The words ''appliance, apparatus, or other agency'' clearly include the physical agencies which are employed in the practice of physiotherapy; and in our opinion no fair reading of section 66-1007 admits of a contrary conclusion.

Again to be specific: By R.C.M. 1947, section 19-102, we are required to construe section 66-1007 ''according to the context and the approved usage of the language,'' i. e., unless there we find technical or other words or phrases, which have acquired a peculiar or otherwise appropriate meaning in law. In section 66-1007 the words ''appliance, apparatus, or other agency'' have no technical, peculiar or appropriate meaning either in the law or other than that given them by their context and what is commonly known as the usages of good English.

Tested by this standard this statute means that if a person prescribes for the use of another physical appliances and agents to treat disease and human ailments, he practices medicine, which is but another way of saying that under our statute a person who practices physiotherapy practices medicine. We think this conclusion inescapable when section 66-1007 is read in the light of what physiotherapy is, and is commonly understood to be, as is also the necessary corollary that the defendant affixed the title ''Dr.'' to his name in a medical sense, certainly in his advertisement when he told the public he was a doctor of physiotherapy, i. e., of a branch of the medical profession.

The defendant's citations are not persuasive of a contrary view. State v. Biggs, 133 N.C. 729, 46 S.E. 401, 64 L.R.A. 139, 98 Am. St. Rep. 731, was decided under a statute and

upon facts which differ materially from our section 66-1007 and the case which Bain brings here. If however the textual difference between the North Carolina statute and ours is not enough to turn the force of that authority when applied to the facts of this appeal, it stands nevertheless squarely opposed to the view taken by the New York courts in their construction and application of the New York law, which beyond any question was at the time substantially the same as ours is now. See Cahill's Consolidated Laws of New York (1930), Ch. 15, Art. 48, sections 1250, 1262, subd. 1(2), 1263, McK. Consol. Laws, c. 16, Education Law, sections 6501, 6512, subd. 4, 6513. The decisions in New York are in point and in accord also with the modern trend of the authorities today, which is that the practice of medicine covers the practice of the healing art in all its branches, one of which is the practice of physiotherapy. If State v. Biggs is a citation otherwise in point, it stands for a minority view which we decline to adopt or follow.

Rubin v. United States, 59 App. D.C. 195, 37 F. (2d) 991, is plainly neither in point nor persuasive of the defendant's position here. Specifically in the Rubin case the statute in force expressly excepted the practice of massage and of the " 'so called Swedish movement cure,' " for which the appellant was there on trial. No question of his use of the prefix "Dr." was presented under a statute which as does ours both limited the use of that title and defined the practice of medicine in terms which fairly covered the defendant's case without exception.

Hurley v. People, 99 Colo. 510, 63 Pac. (2d) 1227, is upon its facts even less applicable to Bain's case. There the Colorado Supreme Court was concerned neither with the use of the title "Dr." nor with the practice of medicine either generally, or in any of its branches. Rather the sole question involved was the defendant's right to teach in his school the importance of what he called "body equilibrium." No such facts are now before us.

Finally State v. Armstrong, 38 Idaho 493, 225 Pac. 491, 492,

33 A.L.R. 835, upon which the defendant places strong reliance, in our opinion supports the conclusion we have reached in his case rather than the contrary. In the Armstrong case the defendant advertised as " 'Dr. Armstrong, Chiropodist.' " The Idaho court held first that chiropody was a recognized occupation, "independent of medicine and surgery, or any other branch of the healing art." Then under section 2 of the Idaho statute, which prohibited the use of the word "doctor" after the manner of our section 66-1007, the opinion continued: "Reading the entire section, and giving it a reasonable construction, the evident intent is to prohibit the use of the word 'doctor' in such a way as to indicate that a person is a licensed practitioner of one of the learned branches of the healing art. No such inference can be reasonably drawn when the qualifying word 'chiropodist' appears in the same advertisement. Of course no other conclusion was possible for the Idaho court after it had held that under the Idaho law the practice of medicine and surgery did not include the practice of chiropody. But we hold here to the contrary that under our statute the practice of medicine in Montana does include the practice of physiotherapy. Therefore necessarily we must conclude further that the use of the word "physiotherapist" indicated that Dr. Bain was a practitioner of a recognized branch of the healing art. In these circumstances the Armstrong decision upon its facts implicitly holds with us that our statute was violated by the defendant Bain when he advertised he was Dr. Bain, a physiotherapist. We think this citation direct authority for our view that the state made a prima facie case against this defendant, and that his motion to dismiss is without merit.

What we have said of that motion disposes also of the defendant's further motion for a new trial upon the ground that the evidence as a whole is insufficient to sustain the verdict against him. There was no error in denying a new trial. When the issue of Bain's guilt or innocence went to the jury the state's case had been measurably strengthened by his admission made while he was on the stand as a witness for himself

that he was a practitioner of "nature's way of healing," which he explained was "from massage, use of heat, lights, and medical gymnastics;" and that at school he was taught "one subject, physiotherapy," which he understood to mean the "use of light, heat, water and medical gymnastics." As we have interpreted our statutes this testimony alone suffices to sustain his conviction for the offense charged, i. e., that he used the title "Dr." in a medical sense without the certificate required by section 66-1007.

2. The defendant's offered instruction No. 3, which the trial court refused, told the jury in substance that to convict they must find (1) that he "appended the 'Dr.' or 'Doctor' to his name," and (2) that he "did so in a medical sense." The court in an earlier instruction had told the jury in substantially identical language precisely as much. The defendant's offer upon the same issues was at best a restatement of the charge already given in slightly different language. Under any construction it was plainly repetitious, and upon this ground was rightly refused. State v. Park, 88 Mont. 21, 33, 34, 289 Pac. 1037; 23 C.J.S., Criminal Law, section 1304, pages, 889-891; 16 C.J.S., Criminal Law, section 2475, pages 1035, 1036; 54 Am. Jur. Trial, section 559, page 444.

Of course, the defendant was entitled to an instruction which would fairly put before the jury his defense, and tell them under what state of fact he was entitled to an acquittal. State v. Hale, 129 Mont. 449, 291 Pac. (2d) 229, and cases cited there. But the defendant's request here did not assume to state his defense, or to tell the jury what facts would work his acquittal. By declining to give this instruction the court merely refused to tell the jury a second time what facts would justify them in convicting the defendant. He is in no position to complain of such a ruling.

3. During the presentation of the defense the district judge consistently sustained objections by the county attorney to questions put to the defendant's witnesses, which were designed to elicit a description of the type of treatment given these wit-

nesses upon their calls as "patients" at the defendant's office. It is argued that the exclusion of this testimony deprived him of his right to show particularly that he had not used the prefix "Dr." in a medical sense.

There is is in this record, however, no offer of proof tending to disclose the substance of the testimony which was excluded. Nor does any question put to any witness, the answer to which was excluded, disclose by express statement or permissible inference the substance of the answer which would have been given had the question been permitted.

In other words we are not advised that the testimony which the court declined to receive would have aided the defense; and of course, if the testimony which the jury did not hear would not have tended in any way to disprove the charge against the defendant, its exclusion was not prejudicial error for which we may reverse this conviction. It was plainly the defendant's duty here to make appropriate offers of proof that we might know the testimony which was excluded would have supported his defense, if such were the case.

Indeed, from what this record discloses, as we read it, it seems that the testimony of these witnesses, had it been received, would have conformed to that of the defendant himself, namely, that he prescribed and directed physiotherapeutic treatments for the relief of human ailments which, within the meaning of our statute, is the practice of medicine, and accordingly evidence not of the defendant's innocence, but rather that he did in fact use the prefix "Dr." in a medical sense as the jury found. Thereby the defense would certainly not have been made out; and in the absence of any offer of proof to the contrary error cannot therefore be predicated upon the court's rulings which excluded this testimony. State v. Sheldon, 54 Mont. 185, 190, 191, 169 Pac. 37; State v. Toy, 65 Mont. 230, 234, 235, 211 Pac. 303; State v. Finley, 72 Mont. 42, 48, 231 Pac. 390.

But by what we have said we are not to be understood as holding that upon an offer of proof timely made, which

disclosed facts tending to show the defendant did not hold himself out as a doctor "in a medical sense," evidence of the treatments he gave should not have been received. Compare State v. Yegge, supra. The defendant was certainly entitled to dispute the state's case and the inferences which it drew from his use of the title "Dr.".

It is of course for the jury in any case to resolve the question here upon the facts before them. We hold only that on this record the defendant has pointed to no evidence excluded by the court, which had it been received would have tended to prove he was not guilty of the offense charged.

And of course also nothing we have said in this opinion is to be construed as a holding that the treatments which the defendant actually gave constituted the practice of medicine within the prohibition of section 66-1007. No such question is properly before us. We decide only that the evidence here was sufficient to go to the jury for them to determine whether the defendant used the title "Dr." in a medical sense in violation of our statute, and that otherwise there is no reversible error in this record.

The judgment and order of the district court denying a new trial are affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (specially concurring).

I concur in the result reached in the foregoing opinion but for a different reason.

In my opinion the New York cases referred to in the majority opinion differ from this. In New York the statute specifically defined "physiotherapy," and provided for the issuance of a license to practice it. Our statute does neither. Likewise the New York statute made it plain that the practice of physiotherapy was the practice of medicine in a limited sense.

The statute also provided that, "A license to practice physio-

therapy shall not permit the holder thereof to administer drugs or to practice medicine as defined in section 1250 [6501] of this article, except to treat diseases under the supervision of a duly licensed physician.'' Education Law, section 6512, subd. 4, McK. Consol. Laws, c. 16.

In the case of People v. Mari, 260 N.Y. 383, 183 N.E. 858, relied on in the majority opinion, the defendant was properly held guilty of practicing medicine without a license because he did not comply with the statutory law providing that he should operate in concert with a duly licensed physician. The court properly held that he did not comply with the New York statute because he failed to obtain a prescription from a physician in advance of the treatment.

The case of O'Neill v. Board of Regents, 272 App. Div. 1086, 74 N.Y.S. (2d) 762, relied on in the majority opinion, simply held that under the New York statutes the practice of physiotherapy is the practice of medicine in a limited field.

In People v. Dennis, 271 App. Div. 526, 66 N.Y.S. (2d) 912, also relied on in the majority opinion, the defendant was a licensed massage operator working with a physiotherapist and it was held that he was properly convicted of practicing medicine because what he did constituted the practice of physiotherapy under the New York statute. As above noted, Montana has no statute defining physiotherapy as does New York. The New York statute defines it as the practice of medicine in a limited way.

I concur in the result reached in the foregoing opinion because I think when defendant advertised that he was a heart specialist and a general practitioner and used the word ''doctor'' or prefixed the title ''Dr.'' before his name, he was using the term ''Dr.'' or ''doctor'' in a medical sense within the meaning of the statute.

Such advertising would imply that defendant was authorized by schooling and training to engage in the general practice of the healing science as usually practiced by a doctor and in

addition that he was a heart specialist which some doctors are not.

While the term "in a medical sense" as used in the statute comes close to being so indefinite and uncertain as to be open to the objection to a criminal statute pointed out in H. Earl Clack Co. v. Public Service Comm., 94 Mont. 488, 22 Pac. (2d) 1056, yet I think, so far as this case is concerned, the evidence shows that the terms were used in a medical sense.

I do not agree that this case is affected by that part of our statute defining the practice of medicine relied on in the foregoing opinion which makes it practicing medicine for one who "recommends, prescribes, or directs" the use of any "drug, medicine, appliance, apparatus, or other agency." Here there is no proof that defendant recommended, prescribed or directed the use of any agency. He himself directly applied whatever agency was used, viz.: massaging. He did not prescribe or direct the use of any agency.

I also disagree with my associates as to the necessity for offers of proof under the circumstances disclosed here. I agree that the result is unaffected by the evidence which was excluded but my reason for this conclusion is that defendant was not prejudiced by the rulings of the court excluding the evidence designed to show the type of treatment administered by defendant to his patients.

One witness, Mr. Cecil Johnson, testified without objection that defendant prescribed no drugs and used no instruments. "Q. He just worked on your body? A. Right. Q. Did he help you? A. Yes." An objection was then made and sustained but no motion was made to strike the answer. Mrs. Prosper Martin also testified without objection that defendant did not prescribe any drugs or use any instruments, and that he helped her baby. Mrs. Robert Stead testified, without objection, that defendant did not prescribe drugs or use any instrument on her husband; that "He used his hands on my husband. Q. Did he help your husband? A. Yes, sir." Mr. Emil Jackson was asked how defendant treated him, and an objec-

tion was sustained. However the witness went on to state, without objection, that defendant used no drugs or surgery or anything like that. He was asked, "Q. Did he ever give you a massage? A. Yes. Q. Did it help you? A. Yes." Iva Rudd testified that he used no drugs. He testified without objection: "Q. Did he use any instruments? A. Just a vibrator on his hand. Q. Did he help you? A. Yes, sir." Mrs. Thomas Pester testified without objection that she took massages and steam baths. Mrs. Zella Guigie testified without objection that defendant used no drugs or instruments.

I think the character of treatments offered by defendant was sufficiently brought out by his witnesses even though some objections were sustained. I fail to see where he was in any wise prejudiced by the rulings of the court in this respect. I do not believe the case would be different had offers of proof been made.