86

The STATE OF MONTANA, Plaintiff and Respondent, v.
RALPH EVERETT MOORE, Defendant and Appellant.
No. 10313.
Submitted May 15, 1962. Decided October 17, 1962.
375 P.2d 218.

John Marriott Kline, William A. McCormick, Glasgow
(argued orally), for appellant.

Stephen Granat and Donald Cole, Malta, Forrest H. Ander-
son, Atty. Gen., Donald A. Garrity, Asst. Atty. Gen., Helena
(argued orally), for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opin-
ion of the Court.

This is an appeal by the defendant, Ralph Everett Moore, from a criminal conviction for violating the provisions of section 66-1007, R.C.M.1947, dealing with the practice of medicine without a certificate, a misdemeanor.

The defendant was tried by a jury, found guilty and sentenced to 90 days and a $500 fine. From this conviction he appeals.

The defendant first contends that the provisions of paragraph (2) of section 66-1007, R.C.M.1947, are in the conjunctive rather than in the disjunctive, and each must be proved.

The defendant next contends that the State failed to prove any of the necessary elements of the crime as he defines it.

The facts pertinent to this inquiry are as follows:

On or about Easter Sunday of 1958, Mr. Kuki and his wife went to see the defendant at the American Legion Plunge located between Saco and Malta, Montana. Mr. Kuki was advised by his friends that the defendant might be able to help his bad back.

While at the Plunge, the witness asked the whereabouts of Doctor Moore, and was directed to a building occupied by the defendant.

Mr. Kuki received massages and steam cabinet treatments for his back, which apparently were of some benefit for he continued to return to see the defendant.

On one occasion, Mrs. Kuki asked the defendant what she might do for a gall bladder condition. She was given an oral list of instructions which she wrote down. The instructions included taking apple juice, juice of a lemon, olive oil, and a pill. The exact nature of the pill was never ascertained.

During another treatment for Mr. Kuki, the defendant was asked about the moles on Mrs. Kuki's skin. He advised that he could remove them and a fee of $4.00 was mentioned.

On or about April 18, 1958, the subject of the moles was again brought up, and defendant suggested that treatments might as well be started at that time.

This is a criminal case, and therefore the question of the defendant's negligence or lack of it is not important for the determination of this matter. The only material facts are that the defendant had Mrs. Kuki sit in a chair which was hooked up to an electrical machine, and that the defendant used a pencil-like apparatus also hooked up to the machine and proceeded to burn off the moles on her arm.

At the time of the treatment, Mrs. Kuki was seated by Mr. Moore in an ordinary wooden chair, referred to in the transcript, as a chair of a type used in kitchens. This chair was wired and connected by a wire to a wall socket. Mrs. Kuki had a large mole on the back part of her arm. Mr. Moore sprayed something from a can which was very cold on the mole and started an electrical machine to remove the mole. He used a pencil-like device much like that used in a child's wood-burning set, and it was attached to the machine. He held this pencil-like machine a short distance from Mrs. Kuki's arm and electric sparks flew from her arm. During the treatment, there was some conversation that Mrs. Kuki was having a hot sensation which made her nervous, and there was a discussion between Mr. Moore and Mrs. Kuki as to whether or not she was hot. Mrs. Kuki got up from the chair and looked around and there was a black spot on the chair about the size of a dime. There was a small burn on her left leg, that Mrs. Kuki thought corresponded to the black spot on the chair. At the insistence of Mr. Kuki, Mr. Moore put something on it and covered it with a band-aid. Mrs. Kuki then sat back in the chair and Mr. Moore proceeded with his treatment. The machine did not work properly and flames kept shooting from the outlet where it was plugged into the wall. From the transcript it is not clear whether Mr. Moore worked on the mole on the neck after the second outlet burst into flame or not, but having tried twice to complete the treatment of Mrs. Kuki, and, the fact that the short kept throwing

flames out into the room from the outlet, the Kukis wisely abandoned further treatment that day.

Several days later Mrs. Kuki went to Dr. Gregory, a practicing physician in Glasgow, Montana, and he discovered a third-degree burn about the size of a fifty cent piece on her buttock, and as a result she was hospitalized.

The prosecution presented evidence that the Kukis both called the defendant, Dr. Moore, and that they were never corrected by the defendant. There was also testimony that the wife of the defendant referred to the defendant as Doctor. There was conflicting evidence admitted on both of these matters. The defendant told Mr. Kuki that he had worked as a physiotherapist in Butte at one time.

It appears to be uncontested that the Kukis never paid the defendant for the treatments.

It might be pointed out that the only substantial evidence against the defendant was presented by the Kukis who have a personal injury suit pending against this defendant and might be biased, however, the jury did believe their testimony.

The basic problem is the interpretation of the second major paragraph of section 66-1007, supra. This long paragraph is composed of two sentences. The first is a long rambling sentence which proceeds for 18 lines. It is with the interpretation of this paragraph that this appeal is concerned. Paragraph (2) of section 66-1007, R.C.M.1947, read as follows:

"Any person shall be regarded as practicing within the meaning of this article who shall append or affix the letters M. B. or M. D., or the title of Dr., or Doctor, or any other sign or appellation in a medical sense to his or her name, who shall publicly profess to be a physician or a surgeon, who shall publicly profess either on his own behalf, in his own name, in his trade name, or on behalf of any other person, corporation, association, partnership, either as manager, bookkeeper, solicitor, or any other agent, to cure, treat, relieve, or palliate any ailment, disease, or infirmity

of the mind or body of another by using or prescribing any drug, medicine, or surgical treatment, or who shall recommend, prescribe, or direct, for the use of any person, any drug, medicine, appliance, apparatus, or other agency, whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body, or for the cure or relief of any wound, fracture, or bodily injury, or other deformity, after having received, or with the intent of receiving therefor, either directly or indirectly, any bonus, gift, or compensation; provided, however, that nothing in this section shall be construed to restrain or restrict any legally licensed osteopathic practitioner and chiropractors practicing under the laws of this state. Nothing in this act shall prohibit any legally licensed pharmacist or mercantile dealer from selling any drugs or medicines which are now allowed to be sold under the laws of the State of Montana or the United States.''

Frankly, section 66-1007, R.C.M.1947, might have been written in a clearer manner. It was not, and we must therefore use it as it stands.

Before the first major punctuation of the semi-colon appears in the first sentence, there are 48 commas. It is manifestly obvious that the comma was used many places where other stronger punctuation should have been used. The ordinary rules of punctuation are thus of no use in determining the offenses which constitute the violation.

On the other hand, the sentence would seem to be logically divided into seven main portions: the first phrase, the four phrases beginning with ''who shall'' and the reference to receiving or intending to receive compensation, and the phrase following the semi-colon.

Divided in that manner the act would read as follows:

''(2)   Any person shall be regarded as practicing within the meaning of this article

''[a]   who shall append or affix the letters M. B. or

M. D., or the title of Dr., or Doctor, or any other sign or appellation in a medical sense to his or her name,

"[b] who shall publicly profess to be a physician or surgeon,

"[c] who shall publicly profess either on his own behalf, in his own name, in his trade name, or on behalf of any other person, corporation, association, partnership, either as manager, bookkeeper, solicitor, or other agent, to cure, treat, relieve, or palliate any ailment, disease, or infirmity of the mind or body of another by using or prescribing any drug, medicine, or surgical treatment,

"[d] or who shall recommend, prescribe, or direct, for the use of any person, any drug, medicine, appliance, apparatus, or other agency whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body, or for the cure or relief of any wound, fracture, or bodily injury, or other deformity,

"after having received, or with the intent of receiving therefor, either directly or indirectly any bonus, gift, or compensation;

"provided, however, that nothing in this section shall be construed to restrain or restrict any legally licensed osteopathic practitioner and chiropractors practicing under the laws of this state."

The defendant's suggestion that the true interpretation of the act—that the offenses listed therein are in the conjunctive rather than the disjunctive—is contrary to two prior decisions of this court; State ex rel. Wong Sun v. District Court, 112 Mont. 153, 113 P.2d 996, and State v. Bain, 130 Mont. 90, 295 P.2d 241. The defendant has not submitted any authority, nor has he convinced this court that we should overrule those controlling decisions.

With respect to defendant's contention that the elements going to make up the violation were not proven, we cannot agree.

The defendant clearly violated the offense set out in our subdivision [d]. We reject his contention that the verbs "recommend", "prescribe", or "direct" refer necessarily to action directed to a third person. One can easily carry out his own recommendations and prescriptions as has the defendant in this case. That the mole or nevus is a disease was the uncontradicted testimony of the State's medical witness, Doctor Gregory. The defendant attempted by the use of the surgical diathermy machine to cure or relieve the disease. Clearly the provision was violated.

The evidence is uncontroverted that a fee of $4 per treatment for the removal of the moles was contemplated by the parties. The fact that this fee was never paid or that no statement was ever sent out is not germane under our act which permits conviction if the action is taken with an intent to receive compensation in any of the listed forms.

The State has shown by its uncontroverted evidence that the defendant had violated the provision. We need not consider the other provisions of the act, but it is possible that the actions of the defendant, in failing to correct the Kukis in their repeated use of the word "Doctor" when addressing the defendant, or his assertion that he had been a physiotherapist when coupled with the fact that the defendant was in fact practicing medicine on the Kukis at the time, could be construed as holding one's self out as a physician or surgeon.

The purpose of the act is to protect the ill and unsuspecting public from the ministration of the ignorant or charlatan. Here the defendant removed a mole surgically without ascertaining beforehand whether the mole was benign or malignant. The testimony of Dr. Gregory, the State's medical witness, showed that a laboratory inspection is often needed by a qualified practitioner in order to distinguish between the two. Clearly here was a case which squarely falls within the protection which the act was designed to afford.

We find no error in the decision of the jury or the interpre-

tation of the law by the district judge. The conviction is affirmed.

That this important section of our health code needs revision is self-evident from reading this opinion. However, that is a function of the Legislature and not for this court.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, DOYLE, and CASTLES concur.